No. 93-573

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

JERRY MARTIN & ASSOCIATES, INC.,

      Plaintiff and Appellant,

v.

DON'S WESTLAND BULK,

      Defendant and Respondent.



APPEAL FROM: District Court of the Fifteenth Judicial District,
In and for the County of Daniels,
The Honorable M. James Sorte, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

            Stephen A. Doherty, Monteau, Guenther & Decker,
            Great Falls, Montana

      For Respondent:

            Loren J. O'Toole, O'Toole & O'Toole, Plentywood,
            Montana


Submitted on Briefs: August 18, 1994

Decided: November 17, 1994

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Jerry Martin and Associates, Inc., appeals from a decision of the Fifteenth Judicial District Court, Daniels County, denying its motion for an order that it be allowed to levy and execute judgment against Donald Becker's personal assets. We affirm.

As reframed by this Court, the dispositive issue is whether the District Court erred by denying Martin's motion for an order which would allow it to levy and execute against Donald Becker's personal assets to collect on a default judgment entered against Don's Westland Bulk.

On February 8, 1985, the United States Bankruptcy Court for the Southern District of California rendered a default judgment in favor of Nucorp Liquidated Trust against Don's Westland Bulk. There is no evidence in the District Court record that Becker was ever served or was a party to these proceedings. The default judgment was subsequently assigned to Jerry Martin and Associates, Inc. (Martin). The judgment was duly entered in the United States District Court in Great Falls, Montana, and in the District Court of the Fifteenth Judicial District, Daniels County, Montana. Eight years after the entry of the default judgment, Martin attempted to collect the judgment by sending a Writ of Execution to the Daniels County Sheriff. The Sheriff returned the writ unsatisfied, informing Martin that there were no assets or bank accounts located in Daniels County belonging to Don's Westland Bulk.

2

Martin then sent Becker a series of interrogatories in aid of execution of judgment. Becker admitted owning Don's Westland Bulk. Becker stated that Don's Westland Bulk was a sole proprietorship. Don's Westland Bulk is not a registered business name in Montana nor does it maintain bank accounts or own assets.

Martin moved the District Court to order that the judgment against Don's Westland Bulk be satisfied by allowing it to levy and execute against Becker's personal assets. The motion was accompanied by a memorandum which in essence argued that Don's Westland Bulk and Donald Becker are the same entity, and thus the default judgment should be satisfied from Becker's personal assets. Martin cited no legal authority for this proposition. The court denied Martin's motion. Martin's motion for reconsideration was likewise denied. Martin appeals.

Did the District Court err by denying Martin's motion for an order which would allow it to levy and execute against Becker's personal assets to satisfy a default judgment entered against Don's Westland Bulk?

Martin presents several different arguments which it claims entitles it to levy and execute against Becker personally. First, Martin claims that § 25-5-104, MCA, supports its right to levy against Becker's assets. Section 25-5-104, MCA, states:

> **Action against a business association.** When two or more persons associated in any business transact such business under a common name, whether it comprises the names of

3

such persons or not, the associates may be sued by such common name, the summons in such cases being served on one or more of the associates; and the judgment in the action shall bind the joint property of all the associates in the same manner as if all had been named defendants and had been sued upon their joint liability. [Emphasis added.]

The statute by its terms is clearly inapplicable. Martin provides no case law or authority for its contention that this statute should be applied to sole proprietors. We conclude that § 25-5-104, MCA, does not entitle Martin to levy and execute against Becker's personal assets to recover on a default judgment against Don's Westland Bulk.

Martin also argues that §§ 30-13-201(1), 201(2), and 215, MCA, prevent Becker from avoiding levy and execution on his personal assets. Section 30-13-201, MCA, includes the following definitions:

(1) "Assumed business name" means any business name other than the full, true, and correct name of a person.

(2) "Person" means any individual, partnership, corporation, or other association.

Section 30-13-215, MCA, states:

**Effect of transacting business without certificate.** No person or persons conducting or transacting business in this state without an effective certificate of registration of an assumed business name or having any interest therein may maintain any suit or action in any of the courts of this state under such name.

Martin contends that since Becker transacted business under the unregistered assumed business name of Don's Westland Bulk, he is liable for the default judgment entered against that company.

4

Again, Martin presents no case law or authority which interprets these statutes in such a manner. Section 30-13-215, MCA, prevents an unregistered business from filing suit under its unregistered name. Nothing in the statute indicates that an individual should be held accountable for a default judgment entered against an unregistered business. We conclude that § 30-13-215, MCA, does not make Becker personally liable for a default judgment entered against Don's Westland Bulk.

Martin also argues that Don's Westland Bulk and Donald Becker are actually one and the same. Martin insists that there has never been a true legal entity known as Don's Westland Bulk; rather this name was merely a front for the individual, Donald Becker. Martin claims that, similar to piercing the corporate veil, this Court should view Becker and Don's Westland Bulk as one and the same entity. Martin cites various cases that deal with piercing the corporate veil. Hando v. PPG Industries, Inc. (1989), 236 Mont. 493, 771 P.2d 956; Meridian Minerals Co. v. Nicor Minerals, Inc. (1987), 228 Mont. 274, 742 P.2d 456. However, Martin presents no authority for its contention that this Court should "pierce the entity veil." Piercing is used to eliminate an individual's corporate liability protection in cases where one establishes that the shareholders are the alter ego of the corporation. Piercing is an equitable remedy and applies only to prevent fraud or achieve equity. See Jody J. Brewster, Comment, Piercing the Corporate Veil in Montana, 44 Mont. L. Rev. 91 (1983). The theory of piercing the

5

corporate veil is inapplicable against a sole proprietorship. Martin admits that Don's Westland Bulk is an unregistered sole proprietorship, not a corporation. We find no merit in Martin's piercing the entity veil argument.

Martin also argues that the "misnomer" rule derived from Rule 15(c), M.R.Civ.P., should apply. The misnomer rule allows a party to amend a complaint to name a defendant after the running of the applicable statute of limitations. The amended complaint "relates back" to the date of the original complaint for statute of limitation purposes. LaForest v. Texaco, Inc. (1978), 179 Mont. 42, 45-46, 585 P.2d 1318, 1320.

The misnomer rule does not apply to this case for several reasons. First, the misnomer rule applies where the correct party is sued, but the name in the complaint is merely misspelled or a subsidiary corporation is named rather than the parent corporation. Wentz v. Alberto Culver Co. (D. Mont. 1969), 294 F.Supp. 1327. The misnomer rule does not apply to situations where an entirely new party would be added to the litigation by allowing the amendment. LaForest, 585 P.2d at 1321. Most importantly, the misnomer rule allows for amendment of complaints, not judgments. Rule 15(c), M.R.Civ.P., from which the misnomer rule is derived, states:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the

period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. [Emphasis added.]

This rule clearly deals with amending pleadings, not judgments. If an amendment is allowed to a complaint, the party added to the complaint may still defend the case on its merits. Lien v. Murphy, Corp. (1982), 201 Mont. 488, 656 P.2d 804. Amendment of a default judgment provides the new party with no such opportunity. Martin cites no authority for its proposition that we should apply the misnomer rule to judgments as well as pleadings. We conclude the misnomer rule is inapplicable to the amendment of judgments.

Finally, Martin argues that the District Court had a duty to consider the evidence presented and determine whether Becker and Don's Westland Bulk were one and the same. Once again, Martin gives no authority for this proposition and fails to explain to this Court why this duty exists. A default judgment was entered against Don's Westland Bulk, not against Donald Becker. Martin cites no authority by which the Montana District Court can amend the judgment of the Federal Bankruptcy Court to include Becker. We will not amend a default judgment to cure a deficient pleading in the bankruptcy court eight years after the default judgment has been entered.

7

We affirm the District Court's holding denying Martin's motion to levy and execute against the assets of Donald Becker in order to collect on a default judgment entered against Don's Westland Bulk.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

8

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

The majority's principle criticism of Martin's suggestion that Donald Becker and Don's Westland Bulk be treated as one and the same is that Martin has failed to provide authority for doing so. Therefore, this opinion provides that authority.

In *A-Z Equip. Co. v. Moody* (Ill. App. Ct. 1980), 410 N.E.2d 438, the plaintiff sued Ken Moody Masonry Company in order to recover rental payments due for certain leased equipment and damages resulting from the alleged conversion of that equipment. The summons was served on a secretary at Ken Moody's place of business. When Moody failed to appear and answer the complaint, a default judgment was entered. Subsequent to the entry of judgment, it was learned that defendant was not a corporation, but a sole proprietorship owned and operated by Kenneth Moody. Pursuant to plaintiff's motion, the judgment was amended to describe the defendant as Kenneth Moody d/b/a Ken Moody Masonry Company.

After execution began on Moody's property, he filed a motion to quash the service of summons. That motion was granted by the trial court, which held that the default judgment was, thereafter, void *ab initio*. The Appellate Court of Illinois reversed the trial court order for the following reason:

> [W]here a summons is served upon defendant personally, and the circumstances are such as to indicate that he is the person intended to be sued, then he is subject to the judgment, even though the process and the judgment do not refer to him by his correct name. (*Janove v. Bacon* (1955), 6 Ill.2d 245, 249-50, 128 N.E.2d 706.) Regarding the

9

issue presented in this matter, our Supreme Court has stated:

> "Names are nothing. The gist of the matter is, were the parties in interest actually served. . . . [I]f the writ is served on a party, by a wrong name, intended to be sued, and he fails to appear and plead the misnomer in abatement, and suffers judgment to be obtained, he is concluded, and in all future litigation may be connected with the suit or judgment by proper averments; and when such averments are made and proved, the party intended to be named in the judgment is affected as though he were properly named therein." *Pond v. Ennis* (1873), 69 Ill. 341, 344-45.

. . . .

> We feel it evident that this defendant was aware that Ken Moody and the Ken Moody Masonry Company were one and the same individual. Accordingly, the trial court erred when it granted defendant's motion to quash the summons and vacate the default judgment.

*A-Z Equip.*, 410 N.E.2d at 440-41 (emphasis added).

In *Hughes v. Cox* (Ala. 1992), 601 So. 2d 465, the plaintiffs filed a complaint naming "Hughes Realty of Clanton, Alabama" as a defendant. Default judgment was entered against that defendant, and at the hearing on damages the caption was amended to substitute Gearlene Hughes d/b/a Hughes Realty as the proper party defendant. Although Gearlene Hughes had been served with the original complaint, she was not served with the amended complaint. Nevertheless, subsequently the district court entered default judgment against her. Hughes' motion to set aside the default judgment was denied, and that order was affirmed on appeal to the Supreme Court of Alabama.

10

On appeal, Hughes contended that because the action was not filed against a suable entity, but only against a trade name under which she did business, the complaint did not name her as a defendant, and that because she was never served with the amended complaint, the district court never obtained jurisdiction over her, and therefore, the judgment was void. Hughes relied on a prior decision by the Alabama Court in *May v. Clanton* (1922), 95 So. 30, in which the court held that a judgment entered against the trade name of a sole proprietorship cannot be enforced by execution against the sole proprietor.

The Alabama court, however, reversed *May* for the reason that:

> The holding in *May*, however, is contrary to the principles of pleading established by the Alabama Rules of Civil Procedure. "These rules shall be construed to secure the just, speedy and inexpensive determination of every action." Rule 1(c). . . . The rules are designed to prevent preclusion of a viable claim or defense because of "technical inaccuracy in pleading." *Prescott v. Thompson Tractor Co.*, 495 So.2d 513, 516 (Ala.1986).

*Hughes*, 601 So. 2d at 468.

The Alabama Court held that since Hughes had personally received service of the complaint naming her sole proprietorship as a defendant, she had received fair notice that a claim was being filed against her. Citing other Alabama decisions, the Alabama Court concluded that:

> By the Court's reasoning in *Nicrosi*, a complaint or a judgment against the Hughes Realty Company would be a complaint or a judgment against whatever entity was doing business in that name. . . .
>
> . . . .

11

. . . The change in the present case was also only "a matter of description . . . which [did] not affect the identity of the parties sought to be described, but only [gave] accuracy and certainty to it."

. . . Under the reasoning of the *Nicrosi* line of cases, the failure to serve Hughes with the amended complaint did not deprive the court of jurisdiction over her. The amendment did not change the nature of the suit, nor did it add any new parties to the action.

. . . .

. . . <u>Having considered the question fully, we affirmatively hold that a judgment entered against a trade name is a judgment against the individual doing business under that trade name, at least so long as the individual was personally served with the complaint.</u> Absent a statute to the contrary, an individual has the right to be known by any name that he chooses, and a judgment entered for or against that individual in either an assumed name or a trade name is valid. See 49 C.J.S. *Judgments* § 75, p. 197 (1947).

*Hughes*, 601 So. 2d at 469, 470, 471 (emphasis added; citation omitted; bracketed material in original).

The *Hughes* decision cites cases from other jurisdictions for its conclusion. They include *Aman Collection Service, Inc. v. Burgess* (Mo. Ct. App. 1981), 612 S.W.2d 405; *Janove v. Bacon* (Ill. 1955), 128 N.E.2d 706; *Hartley v. Jerry's Radio & Electric Shop* (S.D. 1951), 48 N.W.2d 925; *McCall v. Kliros* (Ga. Ct. App. 1947), 45 S.E.2d 72; *Eslinger v. Herndon* (Ga. 1924), 124 S.E. 169. All of these decisions dealt with issues similar to the one presented in this case and arrived at a conclusion opposite to that reached by the majority.

Likewise, Donald Becker has the right to be known by, and deal with other businesses, under any name that he chooses. However, the courts of this State, and other jurisdictions, have a right to

12

hold him accountable for his acts under those trade names that he assumes. I would conclude, as did the Supreme Court of Alabama, that a judgment entered against Becker's trade name is a judgment against Becker, at least so long as he was personally served with the complaint.

The majority cites no authority for its conclusion that even though Don's Westland Bulk and Donald Becker are identical entities, a judgment against Don's Westland Bulk cannot be enforced against Donald Becker. The majority opinion exalts form over substance which, as pointed out by the Supreme Court of Alabama, is the opposite of the result intended by our Rules of Civil Procedure.

The record in this case has not been fully developed because there was no evidentiary hearing prior to the District Court's order denying Martin's motion permitting it to execute against Becker. I would reverse the order of the District Court and remand this case for further proceedings to determine whether Becker was, in fact, personally served prior to entry of default judgment against Don's Westland Bulk in the Bankruptcy Court for the Southern District of California. In the event that he was, I would hold that that judgment can be enforced against him personally by execution on his assets.

_____
Justice

13