965 P.2d 67

**In re the ESTATE OF Martha TRAVERS, Deceased.**

**William STEWART, Personal Representative, Appellant, Cross–Appellee,**

v.

**Richard TRAVERS, Appellee, Cross–Appellant.**

No. 1 CA–CV 97–0356.

Court of Appeals of Arizona, Division 1, Department C.

March 26, 1998.

Review Denied Oct. 20, 1998.

Sacks Tierney P.A. by Scot C. Stirling, Phoenix, for Appellant/Cross–Appellee.

Law Offices of John A. Propstra by John A. Propstra, Douglas V. Drury, Phoenix, for Appellee/Cross–Appellant.

**OPINION**

LANKFORD, Judge.

¶ 1   This appeal raises two issues relating to decedents' estates.  The first issue is whether the decedent's former spouse was an ascertainable creditor entitled to actual

notice of probate proceedings. The second issue is whether or not the time for filing a motion for relief from judgment is a "statute of limitations" subject to extension by statute.

¶ 2  We hold that the decedent's former husband was entitled to actual notice of the probate proceedings. Additionally, because Arizona Rules of Civil Procedure 60(c) is not a statute of limitations, the trial court erred when it applied Arizona Revised Statutes Annotated ("A.R.S.") section 14–3802 to extend the time for filing. Accordingly, we reverse.

¶ 3  The facts are as follows. The decedent ("Martha") and her former husband ("Richard") were married for 20 years. In 1993, Richard filed for divorce. On January 10, 1995, the parties entered into a settlement agreement in which Richard agreed to buy an annuity that would pay Martha $3,000 per month. He also agreed to pay her $26,000 to equalize the community property division. Both parties waived spousal maintenance.

¶ 4  On February 13, Martha's attorney informed Richard's attorney that Martha had changed her mind. She wanted a lump sum instead of the $3,000 monthly payment. Richard agreed and paid Martha $297,987.95, representing the cost of the annuity. The parties signed an amended settlement agreement and the court entered a divorce decree on February 23, 1995.

¶ 5  During these negotiations, Martha had been admitted to the emergency room and diagnosed with renal failure. On February 16, Martha's family doctor had referred her to Dr. Parise, a nephrologist, who admitted Martha to the hospital for a kidney biopsy on February 22. He released her the following day. Later that day Martha signed the amended settlement agreement at her attorney's office. She told neither her attorney nor Richard about her medical condition.

¶ 6  On February 25, the doctor again admitted Martha to the hospital. The steroid and cytoxen drug treatments she received depressed her immune system. She died two weeks later from an infection. According to Dr. Parise, her death was unexpected.

¶ 7  After her death, the court appointed Martha's son, Dr. William Stewart ("Dr. Stewart"), as personal representative of her estate. He published a notice to creditors on May 5, 1995, but failed to notify Richard. In the fall of 1995,[1] Richard presented a claim against the estate alleging that Martha had fraudulently withheld information regarding her illness so that he would agree to the $297,987.95 lump sum payment. The estate disallowed the claim as untimely.

¶ 8  Richard filed a petition in superior court to allow the claim. The estate filed two motions to dismiss. The first motion argued the claim was untimely pursuant to A.R.S. section 14–3803. The second motion argued the petition was untimely under Rule 60(c) of the Arizona Rules of Civil Procedure. The court denied both motions.

¶ 9  When Richard later moved for summary judgment, the court granted it. It found that Martha had violated Ariz. R. Civ. P. 26.1, by hiding her illness. The court then conducted a bench trial and entered additional findings that Martha had intentionally withheld material information about her health in an effort to defraud Richard, who would not have paid her $297,987.95 had he known about her condition. The court ordered the estate to return the money to Richard. However, the court denied Richard's request for attorneys' fees.

¶ 10  The Estate of Martha Travers appeals from a judgment ordering it to return $297,987.95 to Richard because Martha fraudulently withheld material information regarding her health during settlement negotiations in their divorce action. Richard cross-appeals from the court's denial of his request for attorneys' fees. We have jurisdiction pursuant to A.R.S. sections 12–2101(B), 12–2101(F)(1) and 12–2101(J).

¶ 11  The issues which determine this appeal are legal ones which we decide *de novo*. *See City of Scottsdale v. Thomas*, 156 Ariz. 551, 552, 753 P.2d 1207, 1208 (App.1988) (the Court of Appeals is not bound by the trial

---

1.  Richard's attorney signed the claim on September 27, 1995. For reasons not evident in the record, no one filed the claim until October 2, 1995.

court's conclusions of law). Interpretation of statutes and rules presents legal issues which we consider independently of the trial court's decision. *See State v. Getz*, 189 Ariz. 561, 563, 944 P.2d 503, 505 (1997). When the statutory language is clear and unequivocal, the court must abide by it. *See id.* (citing *Pima Cty. Juv. App. No. 74802-2*, 164 Ariz. 25, 33, 790 P.2d 723, 731 (1990) and *Canon Sch. Dist. No. 50 v. W.E.S. Construction Co., Inc.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994)).

¶ 12   We first consider the timeliness of Richard's claim pursuant to A.R.S. section 14–3803. Pursuant to the Probate Code, a personal representative must publish notice to the estate's creditors of his or her appointment, address and that claims against the estate must be filed within a limited time. A.R.S. § 14–3801(B). The personal representative must mail *actual* notice to the same effect to all known or reasonably ascertainable creditors of the estate. A.R.S. §§ 14–3801(B); *see also Matter of Estate of Barry*, 184 Ariz. 506, 508, 910 P.2d 657, 659 (App. 1996).

¶ 13   Richard received no actual notice of the time to file a creditor's claim. The court found that Richard was a reasonably ascertainable creditor entitled to actual notice. The estate could not explain its failure to give Richard notice. Accordingly, the court denied the motion to dismiss.

¶ 14   The estate argues that Richard was not a "creditor" entitled to notice until he attacked the final divorce decree on September 27, 1995. We reject the estate's attempt to distinguish an "actual" creditor from a "potential" creditor. In *Matter of Estate of Kopely*, 159 Ariz. 391, 394, 767 P.2d 1181, 1184 (App.1988), although the creditor had not yet filed an action, the court held that if the identity of a person with a tort claim against the decedent's estate was known or reasonably ascertainable, that person is enti-

tled to actual notice. The statute also requires notice to a "reasonably ascertainable" creditor. A.R.S. § 14–3801.

¶ 15   Richard's claim was ascertainable. His claim was equivalent to the tort claim in *Kopely*. According to the record, the estate knew Richard was interested in obtaining Martha's medical records as early as April 1995. In a letter to the estate's attorney dated May 16, 1995, Richard's attorney referred to a "possible lawsuit" regarding Martha's knowledge of her health prior to the divorce becoming final. This letter demonstrates that the estate, through its attorney, had reason to believe Richard might be a potential claimant at least by the date of the letter.

¶ 16   The court correctly concluded that Richard was a reasonably ascertainable creditor of Martha's estate entitled to actual notice. Because Richard had not received actual notice, the four-month time period in A.R.S. section 14–3803 never began to run and his claim was timely.

¶ 17   Having concluded that Richard's claim against the estate was timely, we now consider whether the court properly extended the time for Richard to file his petition for enforcement of his right to present a claim. In October 1995, Richard petitioned the court to force the estate to pay the claim. The court treated Richard's petition as a Rule 60(c)(3) motion for relief from judgment because the claim conflicted with the divorce judgment providing for a lump sum payment.

¶ 18   Neither party challenges the propriety of the trial court's decision to apply Rule 60.[2] The court concluded that A.R.S. section 14–3802 extended the time limit for Rule 60 motions by four months. It is this proposition with which we must disagree.

¶ 19   Pursuant to Rule 60(c)(3), Richard had six months to seek relief from the divorce judgment.[3] The decree was final on

---

2.  The estate noted that Richard's petition neither cited Rule 60 nor expressly requested relief from the divorce decree. In its opening brief, the estate assumed that treating Richard's petition as a motion for relief from judgment was permissible. Richard appears to agree. He notes that the court *could* have proceeded solely on the Rule 26.1 claims, but he pled in the alternative

and the court permissibly chose to proceed pursuant to Rule 60.

3.  Rule 60(c), Ariz. R. Civ. P., provides:
    On motion and upon such terms as are just the court may relieve a party ... from a final judgment, order or proceeding for the following reasons: ... (3) fraud (whether heretofore

February 23, 1995, allowing Richard until August 23, 1995 to file his motion for relief. However, he did not file his petition until October 2, 1995—more than six months after the entry of judgment.

¶ 20   The court concluded that a probate statute extended the time.  A.R.S. section 14–3802 provides, in relevant part:

> The running of any statute of limitations measured from some other event than death and advertisement for claims against a decedent is suspended during the four months following the decedent's death but resumes thereafter as to claims not barred pursuant to the sections which follow.

¶ 21   A statute of limitations is a legislative enactment which sets maximum time periods during which certain actions can be brought.  Black's Law Dictionary 927 (6th ed.1990).  After the time period has run, legal actions are barred.  *Id.*

■ ¶ 22   The court interpreted Rule 60 as a statute of limitations for the purposes of probate proceedings.  However, the Arizona Supreme Court, not the Arizona Legislature, promulgates the rules governing procedure in our courts.  Because Rule 60 is procedural, we hold that Rule 60 is not a "statute of limitations."  *See* 12 James W. Moore *et al.,* Moore's Federal Practice § 60.20 at 60–47 (3d·ed.  1997) (The rule "does not assume to define the substantive law ... but merely prescribes the practice in proceedings to obtain relief") (referring to similar Rule 60(b), Fed.R.Civ.P.).  The Rule 60 remedy is "purely procedural."  *Id.* at 60–48.  Because section 14–3802 applies to statutes of limitation and not to procedural rules, it cannot extend the six month time period under Rule 60.  By applying section 14–3802, moreover, the

trial court ignored Rule 6(b),[4] which expressly bars the extension of time for filing a Rule 60(c)(3) motion.

¶ 23   We are unpersuaded by the trial court's rationale.  When it extended the six month period, the court erroneously concluded Richard would have had no other remedy without such relief.  Its minute entry reflects an assumption that Rule 60(c)(3) would have precluded Richard from filing a motion in the divorce action because Martha "had died and no personal representative had been appointed."  However, Rule 25(a) provides a procedure for substituting the personal representative for the deceased party.  Because Dr. Stewart was appointed as personal representative of Martha's estate four months before Richard's time to file a Rule 60(c)(3) motion had expired, Dr. Stewart could have been substituted had Richard filed a motion in the divorce case.

■ ¶ 24   Richard also contends he is entitled to relief under Rule 60(c)(6), which allows relief from a final judgment for "any other reason justifying relief from the operation of the judgment."  For this clause to apply, none of the particular reasons set forth in clauses one through five can apply, and the motion must raise "extraordinary circumstances of hardship or injustice."  *Webb v. Erickson,* 134 Ariz. 182, 186–87, 655 P.2d 6, 10–11 (1982);  *see also Edsall v. Superior Ct.,* 143 Ariz. 240, 243, 693 P.2d 895, 898 (1984).

¶ 25   Richard's claim for relief under Rule 60(c)(6) fails to satisfy the first requirement.  He sought relief on the basis of Martha's fraud or misconduct, which falls squarely within the fraud and misconduct provisions of

denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment. The motion shall be filed within a reasonable time, and for reasons (1), (2), and (3) not more than six months after the judgment or order was entered or proceeding was taken.  A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant relief to a defendant served by publi-

· cation as provided by Rule 59(j) or to set aside a judgment for fraud upon the court.

4.  Rule 6(b), Ariz. R. Civ. P., provides in relevant part:

> When ... an act is required or allowed to be done at or within a specified time, the court ... may at any time in its discretion (1) ... order the period enlarged ...; but it may not extend the time for taking any action under Rules 50(b), 52(b), 59(d), (g) and (*l*), and 60(c), except to the extent and under the conditions stated in them....

Rule 60(c)(3). Thus, there is no independent reason justifying relief under Rule 60(c)(6).

¶ 26   In a final effort to avoid the Rule 60(c)(3) time limit, Richard contends that his petition is an independent action either for discovery sanctions or for "fraud upon the court." Richard had no independent action for discovery violations. Rule 37 sets forth the procedures for imposing sanctions for discovery violations, and it contemplates a proceeding within a pending action. *See* Ariz. R. Civ. P. 37(a)(1) (application for a discovery order may be made to the court where the action "is pending" or in the county where a deposition "is being taken").

¶ 27   The proper method for raising an alleged disclosure violation discovered *after* judgment is to file a post-trial motion for new trial or for relief from judgment. *See* Ariz. R. Civ. P. 59(a), 60(c). A violation of Rule 26.1 by intentional nondisclosure may entitle a party to relief under Rule 60(c)(3). *Cf. Estate of Page v. Litzenburg,* 177 Ariz. 84, 93, 865 P.2d 128, 137 (App.1993) (" 'Misconduct' within [Rule 60(c)(3) ] need not amount to fraud or misrepresentation, but may include even accidental omissions.").

¶ 28   Pursuant to Rule 60(c)(3), the petition should have been filed no later than six months after the divorce decree became final. Richard filed his petition after this time limit had expired. The trial court erred in denying the estate's motion to dismiss Richard's petition as untimely. Accordingly, the judgment against the estate is reversed and we direct that the trial court dismiss Richard's petition.

¶ 29   Because we have reversed the judgment, Richard is no longer the successful party. This moots his cross-appeal challenging the court's failure to award him attorneys' fees as the successful party.

FIDEL, P.J., and GRANT, J., concur.